## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **CHRISTOPHER MIDGETT**, individually and on behalf of similarly situated persons, | ) ) ) | |
| Plaintiffs, | ) ) | No.  8:18-cv-00238 |
| v. | ) ) | |
| **WERNER ENTERPRISES, INC.**, | ) ) | |
| Defendant. | ) ) | |

_____

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR
## RULE 23 CLASS CERTIFICATION, FLSA CONDITIONAL CERTIFICATION,
## <u>AND APPROVAL OF NOTICE</u>

Dated: March 10, 2020

Respectfully submitted,

WILLIAMS DIRKS DAMERON LLC

/s/ Eric L. Dirks_____
Eric L. Dirks (*admitted pro hac vice*)
Courtney Stout (*admitted pro hac vice*)
1100 Main Street, Suite 2600
Kansas City, MO  64105
Phone: (816) 945-7110
Fax: (816) 945-7118
dirks@williamsdirks.com
cstout@williamsdirks.com

Jack D. McInnes (admitted *pro hac vice*)
**MCINNES LAW LLC**
1900 W. 75th Street, Suite 120
Prairie Village, KS 66208
p: (913) 220-2488
f: (913) 273-1671
jack@mcinnes-law.com

***Additional Counsel Listed on Signature Page***

i

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

I.  STATEMENT OF FACTS ...................................................................................... 1

   A.  PROCEDURAL HISTORY. ..................................................................................... 1

   B.  WERNER'S BUSINESS. ......................................................................................... 2

   C.  ALL OF WERNER'S OWNER OPERATORS ARE PAID THE SAME, PERFORM THE SAME JOB
DUTIES, AND MUST COMPLY WITH THE SAME POLICIES. ............................................. 4

     1.  Owner Operators Are Paid the Same. ....................................................... 4

     2.  Owner Operators Perform the Same Job Duties. ....................................... 4

     3.  Owner Operators Must Comply With the Same Policies. ............................ 5

II.  ARGUMENT ........................................................................................................ 8

   A.  THE COURT SHOULD CERTIFY THE RULE 23 CLASS ACTION CLAIMS. .............. 8

     1.  Independent Contractor Cases Are Routinely Certified. ............................. 10

     2.  This Case Satisfies All the Requirements of Rule 23. ................................ 10

       a.  Rule 23(a)(1): Numerosity Is Satisfied. ..................................................... 10

       b.  Rule 23(a)(2): Commonality is Satisfied Because Common Evidence Will Generate
Common Answers. ................................................................................................ 11

       c.  Rule 23(a)(3): Typicality is Satisfied Because the Class Members Share
the Same Grievances. ........................................................................................... 13

       d.  Rule 23(a)(4): Adequacy Is Satisfied Because the Class Representative Has Common
Interests with the Class, and Class Counsel Will Protect the Interests of the Class. ......... 14

       e.  The Requirements of Rule 23(b)(3) Are Also Satisfied. ............................. 15

   B.  THE COURT SHOULD ALSO CONDITIONALLY CERTIFY THE FLSA
COLLECTIVE ACTION. ............................................................................................... 20

     1.  Overview and Purpose of FLSA Collective Actions. .................................. 21

     2.  Plaintiff Has Satisfied the Lenient First Stage Standard, and Conditional Certification Is
Appropriate. ........................................................................................................... 22

     3.  Plaintiff's Proposed Notice Informs Class Members About Their Rights and Should Be
Approved. ............................................................................................................... 24

       a.  Plaintiff's Proposed Notice Follows the FJC Model and This Court's Approved
Notice in Abarca. ................................................................................................... 255

       b.  Plaintiff's Dissemination Plan Will Best Inform Class Members of Their Rights. ... 25

       c.  Reminder Notices Are Appropriate. ........................................................... 27

       d.  Werner Should Be Ordered to Provide a Detailed List of Putative Class Members and
Their Contact Information to Assist with Notice. ....................................................... 288

       e. Submission of Consent to Join Forms and Letters of Exclusion ............................29

       f.  Time for Class Members to Opt-In to the Litigation. .................................. 30

III. CONCLUSION ...................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Abarca v. Werner Enterprises, Inc.*, No. 14-cv-319, 2018 WL 1136061 (D. Neb. Feb. 28, 2018)
.................................................................................................................................. 17

*Albelo v. Epic Landscape Productions, L.C.*, 2018 WL 3215738 (W.D. Mo. May 23, 2018)..... 23

*Alexander v. CYDCOR, Inc.*, No. 1:11-CV-01578-SCJ, 2012 WL 1142449 (N.D. Ga. Apr. 6,
2012)................................................................................................................................. 26, 27

*Alpern v. Uti, liCorp. United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ................................................. 13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................... 9, 15, 16

*Amgen Inv. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) .................................... 9, 16

*Baouch v. Werner Enterprises, Inc.*, No. 12-cv-408, 2014 WL 1884000 (D. Neb. May 12, 2014)
.................................................................................................................................. 23

*Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-cv-4321, 2013 WL 3872181 (W.D. Mo. July 25,
2013)................................................................................................................................... 19

*Bassett v. Credit Management Services, Inc.*, No. 17-cv-0069, 2018 WL 3159791 (D. Neb. June
28, 2018)............................................................................................................................. 11

*Beck v. Maximus, Inc.*, 457 F.3d 291 (3rd Cir. 2006) ................................................................. 13

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, (S.D.N.Y. Apr. 29, 2013) ...................................... 17

*Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625, 2015 WL 4240985 (S.D.N.Y. July 13,
2015).................................................................................................................................. 26

*Bowerman, et al. v. Field Asset Services*, No. 13-cv-00057, 2015 WL 1321883 (N.D. Cal. Mar.
24, 2015)............................................................................................................................. 17

*Boyd v. Bank of Am. Corp.*, No. 13-cv-2403, 2013 WL 6536751 (C.D. Cal. Dec. 11, 2013)...... 27

*Chankin v. Tihen Commc'ns. Inc.*, No. 08-cv-196, 2009 WL 775588 (E.D. Mo. Mar. 20, 2009) 22

*Chhab v. Darden Restaurants, Inc.*, No. 11-cv-8345, 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013) .......................................................................................................................... 27

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ........................................................... 9

*Cope v. Let's Eat Out, Inc.*, 319 F.R.D. 544 (W.D. Mo. May 10, 2017)........................ 19

*Cortez v. Nebraska Beef, Inc.*, 266 F.R.D. 275 (D. Neb. Feb. 16, 2010)................... 10, 13, 14, 15

*DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389 (D. Mass. Nov. 9, 2017) ............. 10

*Day v. Celadon Trucking Servs., Inc.*, 827 F. 3d 817 (8th Cir. 2016) ........................................... 16

*Deatrick v. Securitas Sec. Servs. USA, Inc.*, No. 13-cv-05016, 2014 WL 5358723 (N.D. Cal. Oct. 20, 2014) ........................................................................................................................ 29

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ................................................. 11, 13

*Drake v. Steak N Shake Operations, Inc.*, 286 F. Supp. 3d 1040 (E.D. Mo. Dec. 22, 2007) ....... 11

*Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510 (W.D. Tex. Aug. 27, 2015) ............... 29

*Edwards v. Multiband Corp.*, No. 12-cv-2826, 2011 WL 117232 (D. Minn. Jan. 13, 2011)....... 24

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2nd Cir. 1968) ........................................................ 9

*Emily v. Raineri Constr., LLC*, No. 4:15-cv-282, 2015 WL 7429993 (E.D. Mo. Nov. 20, 2015) 26

*Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968) ........................................................................... 9

*Fontenot v. McNeil Industrial, Inc.*, No. 17-cv-3113, 2018 WL 5724863 (D. Neb. Sept. 19, 2018) ........................................................................................................................... 23, 24

*Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418 (M.D. Ala. Oct. 30, 1991) .................. 22

*Gee v. Suntrust Mortgage, In.*, No. 10-cv-1509, 2011 WL 722111 (N.D. Cal. Feb. 18, 2011) ... 28

*Gonzalez v. Tier One Sec., Inc.*, No. 12-cv-806, 2013 WL 1455587 (W.D. Tex. Apr. 8, 2013).. 24

*Greenwald v. Phillips Home Furnishings, Inc.*, No. 08-cv-1128, 2009 WL 259744 (E.D. Mo. Feb. 3, 2009) ........................................................................................................ 28

*Hale v. AFNI, Inc.*, 264 F.R.D. 402 (N.D. Ill. Oct. 23, 2009) ..................................................... 10

*Harris v. Chipotle Mexican Grill, Inc.*, No. 13-cv-1719, 2014 WL 4449670 (D. Minn. Apr. 10, 2014) ............................................................................................................................ 29

*Harris v. Medical Transportation Management*, 317 F. Supp. 3d 421 (D.C. July 17, 2018) ....... 26

*Harris v. Pathways Cmty. Behavioral Healthcare, Inc.*, No. 10-cv-0789, 2012 WL 1906444 (W.D. Mo. May 25, 2012) ...................................................................................... 28

*Helton v. Factor 5, Inc.*, No. 10-cv-4927, 2012 WL 2428219 (N.D. Cal. June 26, 2012) ........... 27

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989) ......................................... 21, 22, 24, 25

*In re AT&T Mobility Wireless Data Service Sales Tax Litigation*, 789 F. Supp. 2d 935 (N.D. Ill. June 2, 2011) ................................................................................................... 26

*In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011) .................................. 9

*Johnson v. Serenity Transportation, Inc.*, No. 15-cv-2004, 2018 WL 3646540 (N.D. Cal. Aug. 1, 2018) ............................................................................................................ 12, 14, 19

*Jones v. JGC Dallas LLC*, No. 3:11-cv-2743, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012) ... 29

*Kelly v. Bank of Am.*, N.A., No. 10-C-5332, 2011 WL 7718421 (N.D. Ill. Sept. 23, 2011) ........ 29

*Kennedy v. Boulevard Bank*, No. 12-cv-040, 2012 WL 3637766 (E.D. Mo. Aug. 22, 2012) ...... 23

*Landry v. Swire Oilfield Services, LLC*, 252 F. Supp. 3d 1079 (D.N.M. May 2, 2017) ......... 26, 27

*Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013) .................................................. 19

*Loomis v. CUSA LLC*, 257 F.R.D. 674 (D. Minn. June 11, 2009) ............................................... 10

*Lopez v. Tyson Foods*, No. 06-cv-459, 2008 WL 3485289 (D. Neb. Aug. 7, 2008) ............. passim

*Morales v. Greater Omaha Packing Co.*, No. 08-cv-0088, 2009 WL 1650016 (D. Neb. June 9, 2009).................................................................................................................. 21, 22, 23

*Moreno v. JCT Logistics, Inc., et al.*, No. 17-cv-2489, 2019 WL 3858999 (C.D. Cal. May 29, 2019)................................................................................................................................ 10

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)...................................................... 20

*Mund v. EMCC, Inc.*, 259 F.R.D. 180 (D. Minn. 2009) ................................................................ 11

*Nerland v. Caribou Coffee Co. Inc.*, 564 F. Supp. 2d 1010 (D. Minn. May 17, 2007) ............... 17

*Nobles v. State Farm Mutual Automobile Insurance Co.*, No. 2:10-CV-04175, 2011 WL 5563444 (W.D. Mo. Nov. 15, 2011) ....................................................................................................... 27

*Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596 (S.D. Cal. 2010).................................... 12

*Oliphant v. Sprint Corp.*, No. 18-cv-0353, 2019 WL 2088052 (D. Neb. Apr. 26, 2019)............. 28

*Parko v. Shell Oil Co.*, 739 F.3d 1083 (7th Cir. 2014) ................................................................ 16

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) .............................................. 11, 13, 14

*Penthouse Exec. Club Compensation Litigation*, No. 10-cv-1145, 2014 WL 185628 (S.D.N.Y. Jan. 14, 2014) ......................................................................................................................... 26

*Petrone v. Werner Enterprises, Inc.*, No. 12-cv-307, 2013 WL 3479280 (D. Neb. July 10, 2013) ................................................................................................................................................... 16

*Phelps v. MC Commc'ns, Inc.*, 2:11-CV-00423-PMP, 2011 WL 3298414 (D. Nev. Aug. 1, 2011) ................................................................................................................................................... 27

*Pierce v. Novastar Mortgage, Inc.*, No. C-05-5835, 2007 WL 505670 (W.D. Wash. Feb. 12, 2007)......................................................................................................................................... 25

*Postawko v. Missouri Dep't of Corrections*, 910 F.3d 1030 (8th Cir. 2018)................................. 9

*Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197 (N.D. Cal. Apr. 25, 2013)........................ 27

*Rhodes v. Truman Med. Ctr., Inc.*, No. 4:13-CV-00990-NKL, 2014 WL 4722285 (W.D. Mo. Sept. 23, 2014) ............................................................................................ 25

*Rikard v. U.S. Auto Prot., LLC*, 287 F.R.D. 486 (E.D. Mo. Nov. 30, 2012) ................................ 11

*Rivera v. Brickman*, No. 05-1518-LP, 2006 WL 680926 (E.D. Pa. March 10, 2006) ................. 28

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal.  Apr. 19, 2006) ................ 26

*Sanchez v. Sephora USA, Inc.*, No. 11-cv-3396, 2012 WL 2945753 (N.D. Cal. July 18, 2012).. 27

*Sandusky Wellness Center, LLC v. Medtox Sci., Inc.*, 821 F. 3d 992 (8th Cir. 2016) .................. 11

*Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-cv-2104, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ...................................................................................................... 14

*Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144  (D. Minn. Dec. 12, 2005) ............. 21

*Taylor v. Bear Comm'ns, LLC*, No. 12-cv-01261, 2013 WL 3270971 (W.D. Mo. June 27, 2013) ........................................................................................................................ 28

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) .................................................... 16, 19

*Uwaeke v. Swope Cmty. Enters., Inc.*, No. 12-cv-1415, 2013 WL 3467062 (W.D. Mo. July 10, 2013) ...................................................................................................... 28

*Varacallo v. Mass Mut. Life Ins. Co.*, 226 F.R.D. 207 (D. N.J. Feb. 15, 2005) .......................... 25

*Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588 (N.D. Cal. Nov. 20, 2014) ........................ passim

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................. 11

*Woods v. Vector Mktg. Corp.*, No. C-14-0264, 2015 WL 1198593 (N.D. Cal. Mar. 16, 2015)... 29

**Statutes**

29 U.S.C. § 216(b) .......................................................................................................... 20, 21, 22

Neb. Rev. Stat. §§ 48-1228 .................................................................................................. 1, 9

**Rules**

Rule 23 of the Federal Rules of Civil Procedure ................................................................ passim

Rule 23(a) ................................................................................................................................ 9, 15

Rule 23(a)(1) ................................................................................................................................. 10

Rule 23(a)(2) ............................................................................................................................. 11, 13

Rule 23(a)(3) ................................................................................................................................. 13

Rule 23(a)(4) ............................................................................................................................. 14, 15

Rule 23(b) ....................................................................................................................................... 9

Rule 23(b)(1) ................................................................................................................................. 15

Rule 23(b)(2) ................................................................................................................................. 15

Rule 23(b)(3) ........................................................................................................................... passim

Rule 23(b)(3)(a) ............................................................................................................................ 16

Rule 23(b)(3)(b) ............................................................................................................................ 19

**Regulations**

49 C.F.R. § 390.3 ............................................................................................................................ 3

49 C.F.R. § 390.5 ............................................................................................................................ 3

## INTRODUCTION

Defendant Werner Enterprises, Inc. ("Werner") has a policy of misclassifying its drivers, like Plaintiff Christopher Midgett, as independent contractors using its Owner Operator Program. The Owner Operator program passes Werner's overhead costs to workers, deprives Owner Operators of their minimum wages, and allows Werner to offload its aging fleet of trucks onto its drivers. This motion seeks to protect the rights of these Owner Operators. Plaintiff requests permission to send Owner Operators notice of their rights under Rule 23 and the Fair Labor Standards Act ("FLSA").

In classifying all Owner Operators as independent contractors, Werner did not consider any individual circumstances or perform calculations that were unique to individual drivers, or even specific groups of drivers. Werner simply classified all drivers who were Owner Operators as independent contractors. All Owner Operators are subject to the same policies, pay agreements, handbooks, and regulations, making class treatment easy. Courts routinely certify class and collective actions in cases such as this. *See infra* section II(A)(1) and II(2)(e)(i). As set forth below, Plaintiff has satisfied the applicable standard for Rule 23 class action certification and provided more than the "reasonable basis" needed to satisfy the "lenient standard" for FLSA conditional certification. The Court should certify a class and collective action here and authorize notice be sent to the class of approximately 1,100 drivers.

## I.   STATEMENT OF FACTS

### A.  Procedural History.

Plaintiff brought this case as a Rule 23 class action under the Nebraska Wage Payment and Collection Act ("NWPCA"), Neb. Rev. Stat. §§ 48-1228 *et seq*., and Nebraska common law and

as a collective action under the FLSA, to recover unpaid minimum wages, improper deductions, and compensatory and liquidated damages owed to Plaintiff and similarly situated truck drivers.

Although this case was filed in May 2018, it is relatively early in its procedural posture because the parties spent approximately six (6) months litigating arbitration issues both in this Court and the AAA. Nonetheless, the parties have exchanged limited written discovery, Defendant has deposed Plaintiff, and Plaintiff has taken a limited corporate representative deposition. Through agreement and/or Court order, Defendant has limited its interrogatory answers, production and deposition testimony to what it deemed relevant to certification. Notably, Defendant did not answer interrogatories, produce documents, or provide deposition testimony which would provide Plaintiff with information or identification about any Owner Operators who were not named Plaintiffs to this action, including any complaints from those Owner Operators. (*See* Ex. M, Defendant's Responses to Plaintiff's Requests for Production, ¶¶ 3, 24; *see also* Ex. N, Defendant's Answers to Plaintiff's First Interrogatories to Defendant Werner Enterprises, Inc., ¶ 2.)

**B. Werner's Business.**

Werner is a "transportation and logistics company engaged primarily in transporting truckload shipments of general commodities in both interstate and intrastate commerce." (Ex. H, 2018 Annual Report, at 1). "At the end of 2018, [its] Truckload Transportation Services ("Truckload") segment had a fleet of 7,820 trucks, of which 7,240 were company-operated and 580 were owned and operated by independent contractors." (*Id.*)

**1. Werner's Owner Operator Program.**

Drivers in the Owner Operator program deliver freight exclusively for Werner, just like company drivers. (Ex. C, Dittberner Depo., at 55:4-8). Drivers interested in joining the program

are directed to call Werner's Fleet Sales division. (*Id.* at 90:20-25.) They are then interviewed by Werner's fleet management team. (*Id.* at 91:1-92:2.) And, if the process continues, credit and background checks are performed by Werner. (*Id.* at 91:1-18.) If the drivers do not own trucks, Werner gives them options to purchase or lease Werner trucks. (*Id.* at 91:1-18.) Regardless of whether drivers own a truck, or whether they purchase or lease a truck from Werner, they drive as Owner Operators using Werner's DOT license. (Ex. B, Tisinger Depo., at 75:7-23.)

Werner is regulated by the United States Department of Transportation ("DOT") and required to comply with all DOT regulations. (*Id.* at 18:11-18.) The DOT requires that all "employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce" comply with these regulations. 49 C.F.R. § 390.3. These regulations are applicable to all drivers, even if they have been classified by their trucking company as independent contractors. 49 C.F.R. § 390.5. Indeed, the DOT defines independent contractor drivers as "employees" because carriers, like Werner, are responsible to oversee stringent regulatory requirements over all drivers in their fleets:

> Employee means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (**including an independent contractor while in the course of operating a commercial motor vehicle**), a mechanic, and a freight handler.

*Id.* (emphasis added).

Werner admits that federal law requires it to enforce policies that apply to all its drivers, regardless of how they classified them. (Ex. A, Maus Depo., at 5:17-24, 54:17-23, 55:4-7, 114:20-115:10; Ex. E, Contractor Operating Agreement, Bates 00002983.)

**C. All of Werner's Owner Operators Are Paid the Same, Perform the Same Job Duties, and Must Comply with the Same Policies.**

**1. Owner Operators Are Paid the Same.**

Werner pays all its Owner Operators per mile driven, just like its company drivers. (Ex. B, Tisinger Depo., at 37:11-19; Ex. F, Application for Employment, Bates 00000444). They are also eligible to receive payment for other items such as stop pay if they deliver freight at stops prior to the final destination, just like company drivers (Ex. B, Tisinger Depo., at 39:4-40:17), compensation for helping unload freight (*id*. at 40:18-21), and "shag pay" (*id*. at 40:22-41:3).

All Owner Operators are also subject to deductions from their weekly pay. (*Id*. at 42:5-13; Ex. D, Werner Handbook, Bates 00002421). Werner admits that Owner Operators are not paid minimum wages if their weekly pay (after deductions) does not meet the federal or Nebraska minimum wage. (Ex. B., Tisinger Depo., at 67:10-23, 69:1-11.) It also admits that in some weeks, Owner Operators have received little or no net pay at all:

> *Q. Was it regularly that you or your department saw that there was drivers that were experiencing situations in which the mileage and other revenue was overshadowed by expenses and deductions?*
>
> *A. Yes.*

(*Id*. at 67:15-23.)

**2. Owner Operators Perform the Same Job Duties.**

The primary duty of a Werner truck driver is to drive a truck that transports and delivers freight from initial intake to final delivery on behalf of Werner. (Ex. A, Maus Depo., at 45:22-24; Ex. C, Dittberner Depo., at 5:13-17.) Owner Operators who purchase their truck and Owner Operators who lease their truck are treated the same in all material respects and are subject to the same policies and regulations. (Ex. C, Dittberner Depo., at 35:1-18.) The only difference that Werner's corporate representative was able to identify was that Owner Operators who own their

own trucks can have maintenance performed on their trucks anywhere they choose, while Owner Operators that lease their trucks through Werner must receive truck maintenance at a Werner maintenance facility. (*Id*. at 97:6-98:8.)

### 3. Owner Operators Must Comply With the Same Policies.

All Owner Operators – whether they purchased their trucks from Werner or someone else or leased their truck from Werner – must comply with Werner's Contractor Operating Agreement ("Operating Agreement.")[1] (Ex. B, Tisinger Depo., at 77:15-24,  78:17-24; Ex. C, Dittberner Depo., at 32:21-33:8.)

Similarly, all Owner Operators are required to comply with Werner's Owner Operator Handbook ("Handbook"). (Ex. A, Maus Depo., at 31:7-19; 32:7-23; Ex. D, Werner Handbook, Bates 00002371.) In fact, Owner Operators can be disciplined or terminated for noncompliance with the Handbook. (Ex. A, Maus Depo., at 89:5-90:4; Ex. D, Werner Owner Operator Agreement, Bates 00002371.) And the Handbook applies to all Owner Operators, regardless of whether they lease or own their truck. (Ex. A, Maus Depo., at 31:7-19; 32:7-23.)

For example, all Owner Operators must comply with the following rules and regulations established by Werner:

1. All Owner Operators must drive exclusively for Werner.[2] (Ex. B, Tisinger Depo., at 79:20-81:16; Ex. C, Dittberner Depo., at 52:15-22, 55:4-8.)

2. All Owner Operators must complete once daily inspections of their trucks prior to beginning a trip. (Ex. A, Maus Depo., at 62:16-63:12; Ex. D, Werner Handbook, Bates

---

[1] The Operating Agreement is updated from time to time; however, the newest version supersedes older versions and is the operative version for all Owner Operators. (Ex. C, Dittberner Depo., at 39:11-24.) The version cited throughout this memorandum in support and attached as Exhibit E, is current as of March 28, 2019, and is the most current version in the possession of Plaintiff. (*Id*.)

[2] In May 2019, Werner modified this policy such that if Owner Operators wanted to drive for someone else, they cannot drive under Werner's DOT number and must receive Werner's written consent to drive for someone else. (Ex. B, Tisinger Depo., at 79:21-80:3; 81:16-24.) Despite this policy change, Werner's corporate representatives were not aware of any Owner Operator who ever drove for another company while employed as an Owner Operator with Werner. (*Id*. at 82:21-83:17; Ex. C, Dittberner Depo., at 56:7-9, 57:21-25.)

00002438.) The results of such inspections must be recorded and sent to Werner each day the Owner Operator drives, even if there is nothing to report. (*Id.*)

3. All Owner Operators must maintain and update specific technology on their trucks and keep their trucks clean and "business like in appearance and color." (Ex. D, Werner Handbook, Bates 00002386-87.)

4. All Owner Operators must have Werner logos and signs on their tractors. (Ex. D, Werner Handbook, Bates 00002386.)

5. All Owner Operators' trucks cannot be more than five (5) years old. (Ex. D, Werner Handbook, Bates 00002386.)

6. All Owner Operators must refrain from using linears, radar detectors, or other detection devices in their trucks. (Ex. D, Werner Handbook, Bates 00002386.)

7. All Owner Operators' trucks must pass Werner's inspections. (Ex. D, Werner Handbook, Bates 00002386.)

8. All Owner Operators are required to maintain Werner specified navigation software called "Navigo" in their trucks to allow Werner to view truck routes and monitor truck locations. (Ex. A, Maus Depo., at 21:18-22:19.) Using this technology, Werner automatically monitors truck movement for all Owner Operators. (Ex. H, Annual Report at 2.) In fact, Werner obtains specific data providing the location of all trucks in its fleet every fifteen (15) minutes. (Ex. A, Maus Depo., at 21:18-22:19.)

9. All Owner Operators must operate under Werner's DOT number and have that number affixed to their truck. (Ex. B, Tisinger Depo., at 75:7-11.)

10. All Owner Operators are required to have electronic logging devices, also known as "in cab devices," in their trucks at all times to allow Werner and drivers to communicate. (Ex. A, Maus Depo., at 16:13-17:6.)

11. All Owner Operators must log their hours of service on Werner's logging device, known as the "MCP200." (Ex. D, Werner Handbook, Bates 00002505.)

12. All Owner Operators must keep their driving logs current and accurate. (*Id.*, Bates 00002505.)

13. All Owner Operators must log when they purchase fuel, complete a pre-trip inspection, and each time they change their duty status by sending a message on the MCP200. (*Id.*, Bates 00002505.)

14. All Owner Operators are subject to corrective action if they do not properly log their hours of service. (*Id.*, Bates 00002371, 2388.)

15. All Owner Operators are required to communicate with Werner at regular intervals regarding the status of their trips and deliveries. (Ex. A, Maus Depo., at 86:13-87:8.)

16. All Owner Operators' calls with Werner are subject to monitoring and recording by Werner. (*Id*. at 105:18-106:21.)

17. All Owner Operators are prohibited from recording any work-related phone calls, meetings, or other company activities unless given express permission from Werner. (Ex. D, Werner Handbook, Bates 00002390.)

18. All Owner Operators are required by Werner to have and maintain several types of insurance, including physical damage insurance, bobtail insurance with a minimum $1 million coverage limit, and worker's compensation insurance. (Ex. D, Werner Handbook, Bates 00002459.)

19. All Owner Operators must deliver freight for customers that are selected by Werner. (Ex. C, Dittberner Depo., at 48:6-19, 48:24-49:11, 7:23-8:21.)

20. Owner Operators do not contact customers or negotiate their own trips with customers; Werner negotiates trips with customers. (*Id*. at 26:5-8.)

21. All Owner Operators must be on time with delivery and pick up as determined by Werner. (*Id*. at 59:4-61:25, 50:18-51:1.) They are notified by Werner if they are late on pick up or delivery or if it appears from Werner's location tracking that they will be late. (*Id*.)

22. All Owner Operators are subject to discipline if they are not on time with delivery or pick up. (Ex. D, Werner Handbook, Bates 00002399; Ex. C, Dittberner Depo., at 62:2-11.) For example, Mr. Midgett was disciplined for late delivery on nine (9) occasions. (Ex. K, Driver Disciplinary –Midgett, Bates 00007497, 00007533, 00007538, 00007551, 00007588, 00007589, 00007724, 00007725, 00007726).

23. All Owner Operators must comply with Werner's passenger and guest policy. (Ex. A, Maus Depo., at 89:5-90:4.) They must obtain permits from Werner if they wish to have a non-Werner affiliated employee or agent ride in their truck, including spouses and family members. (*Id*. at 92:18-93:7; 109:13-110:10.) For example, Plaintiff was required to complete and submit a passenger authorization form and get approval from Werner before his wife could ride in his truck. (Ex. J, Werner Passenger Authorization and Release, Bates 00007556, 00007558.)

24. All Owner Operators must obtain a permit from Werner if an Owner Operator wishes to have a pet ride in their truck. (Ex. A, Maus Depo., at 110:5-111:3.)

25. All Owner Operator trucks are subject to search by any Werner agent or employee at any time. (Ex. D, Werner Handbook, Bates 00002390.)

26. All Owner Operators are required to report all tickets and citations, including parking tickets, that occur in their personal vehicles. (*Id.*, Bates 00002395.)

27. All Owner Operators are required to submit all commercial vehicle inspection reports to Werner. (*Id.*, Bates 00002395.)

28. All Owner Operators are required to report any motor vehicle accidents to Werner immediately. (Ex. F, Christopher Midgett Application for Employment, Bates 00000251; Ex. E, Operating Agreement, Bates 00002983.) Further, after an accident, Owner Operators may not communicate with anyone other than Werner or law enforcement about the accident. (Ex. A, Maus Depo., at 33:3-8; Ex. D, Werner Handbook, Bates 00002491.)

## II.   ARGUMENT

## A.  THE COURT SHOULD CERTIFY THE RULE 23 CLASS ACTION CLAIMS.

Plaintiff brings Counts II-III of the Second Amended Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff's Second Amended Complaint defines this "Wage Class" as follows:

> All current and former drivers classified as independent contractors who transported Defendant's truckload shipments using trucks they owned or leased[3] within four (4) years of the commencement of this action.[4]

(Second Amended Complaint ¶ 43, ECF No. 60).

Plaintiff seeks nationwide class certification pursuant to Rule 23 for claims based on Nebraska law. Although these claims are legally distinct from the FLSA claims, they are based on the same factual background. Plaintiff claims that Werner's misclassification of Owner Operators as independent contractors violates Nebraska's Wage Payment Collection Act ("NWPCA"),

---

[3] The lessee class may be treated as a subclass.

[4] Specifically excluded from the class are independent contractors who own more than one truck or who employ or employed additional drivers to drive their trucks.

Neb. Rev. Stat. § 48-1228 *et seq*, because Werner does not ensure that Owner Operators receive minimum wages, and this practice unjustly enriches Werner.

Class certification requires that an action satisfy the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Under Rule 23(a), the proposed class must satisfy the requirements of numerosity, commonality, typicality, and adequacy. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Further, under Rule 23(b)(3), Plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that maintaining the suit as a class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 615-16.

A decision to certify a class is not a judgment on the merits of the case. *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). The Court's primary task in considering class certification under Rule 23 is only "to examine whether [the] claims are appropriate for class resolution." *Postawko v. Missouri Dep't of Corrections*, 910 F.3d 1030, 1037 (8th Cir. 2018). As a result, the Court does not have "license to engage in free-ranging merits inquiries at the certification stage." *Id.* (quoting *Amgen Inv. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)).

Further, although the Court has discretion in deciding whether or not to certify a class, the court should err on the side of granting class certification where possible. *See e.g., Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ("if there is an error to be made, let it be in favor and not against the maintenance of a class action, for it is always subject to modification should later developments during the course of trial so require") (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 566 (2nd Cir. 1968)). In this case, the proposed Class meets all the requirements of Rule 23(a) and (b)(3) and should be certified.

1.  **Independent Contractor Cases Are Routinely Certified.**

Cases like this in which employers misclassify workers as independent contractors instead of employees are ripe for class certification. Courts have routinely certified trucking misclassification cases such as this. *See Moreno v. JCT Logistics, Inc., et al.*, No. 17-cv-2489, 2019 WL 3858999, at *19 (C.D. Cal. May 29, 2019) (certifying a Rule 23 class where truck drivers alleged trucking company violated state wage and hour laws by misclassifying them as independent contractors); *DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 407 (D. Mass. Nov. 9, 2017) (certifying a Rule 23 class of truck drivers that alleged trucking company violated state wage laws by treating them as independent contractors rather than employees, deducting expenses from their pay, and requiring them to pay for workers' compensation coverage); *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 606 (N.D. Cal. Nov. 20, 2014) (certifying a Rule 23 class of truck drivers alleging trucking company violated state wage and hour laws by misclassifying them as independent contractors); *Loomis v. CUSA LLC*, 257 F.R.D. 674, 678 (D. Minn. June 11, 2009) (certifying FLSA class alleging statutory wage violations where drivers alleged they were misclassified as independent contractors).

2.  **This Case Satisfies All the Requirements of Rule 23.**

    a.  *Rule 23(a)(1): Numerosity Is Satisfied.*

Rule 23(a)(1) requires "the class be so numerous that joinder of all members is impracticable." This requires impracticability, not impossibility. *Lopez v. Tyson Foods*, 06-cv-459, 2008 WL 3485289, at *15 (D. Neb. Aug. 7, 2008). Although the Eighth Circuit has not established strict requirements regarding the size of a proposed class, *see Cortez v. Nebraska Beef, Inc.*, 266 F.R.D. 275, 289 (D. Neb. Feb. 16, 2010), class sizes as small as forty have satisfied this requirement. *See Hale v. AFNI, Inc.*, 264 F.R.D. 402, 404 (N.D. Ill. Oct. 23, 2009). Further,

Plaintiff is not required to show the exact number of class members at this stage. *Lopez*, 06-cv-459, 2008 WL 3485289, at *15. Here, the proposed class easily meets the numerosity requirement because the class includes at least 1,122 class members. (Ex. C at 31:14-16.) However, the number of class members is likely even greater because this figure does not include all Werner's Owner Operators. (Ex. C, Dittberner Depo., at 31:14-24.)[5]

        b. *Rule 23(a)(2): Commonality is Satisfied Because Common Evidence Will Generate Common Answers.*

Rule 23(a)(2) requires that Plaintiff show the claims involve common questions. *Sandusky Wellness Center, LLC v. Medtox Sci., Inc.*, 821 F. 3d 992, 998 (8th Cir. 2016) (citation omitted). However, "[c]ommonality is not required on every question raised in a class action." *Bassett v. Credit Management Services, Inc.*, No. 17-cv-0069, 2018 WL 3159791, at *5 (D. Neb. June 28, 2018) (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). Further, "[c]ourts within the Eighth Circuit have stated that 'the commonality requirement imposes a very light burden on a plaintiff seeking to certify a class and is easily satisfied.'" *See, e.g., Rikard v. U.S. Auto Prot., LLC*, 287 F.R.D. 486, 489-90 (E.D. Mo. Nov. 30, 2012) (quoting *Mund v. EMCC, Inc.*, 259 F.R.D. 180, 183 (D. Minn. 2009)). *See also Lopez*, 06-cv-459, 2008 WL 3485289, at *16 ("[t]he rule does not require that every question of law or fact be common to every member of the class") (quoting *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982)). In fact, a single common question is sufficient to meet the commonality standard. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). *See also Drake v. Steak N Shake Operations, Inc.*, 286 F. Supp. 3d 1040, 1052 (E.D. Mo. Dec. 22, 2007) (same).

---

[5] Although the deposition transcript states that individuals who leased through Werner were included in this calculation, this answer was changed in the Errata Sheet. The transcript, with the correction, states that individuals who leased through Werner were not included in making this calculation. (*See* Ex. C, Dittberner Depo., Errata Sheet.)

Here, commonality is satisfied because Plaintiff's claims arise from Werner's uniform misclassification of Owner Operators as independent contractors. The primary legal and factual issues are the same for all class members because they all arise from Werner's single policy and practice of misclassifying Owner Operators as independent contractors without regard to any alleged individualized issues. While only one common question of law or fact is required, this case has many common questions, including, but not limited to:

- Whether Werner misclassified their Owner Operators as independent contractors;

- Whether Werner maintained sufficient control over Owner Operators such that they were misclassified as independent contractors;

- Whether Werner failed to pay Owner Operators minimum wage payments in one or more workweeks after the Owner Operators' costs and expenses were deducted;

- Whether Werner was required to control the Owner Operator's conduct pursuant to federal trucking regulations; and

- Whether Werner was unjustly enriched by retaining business overhead expenses by passing them on to Owner Operators.

Each of the foregoing questions is common to the proposed Rule 23 Class because the questions apply to all class members. *See Johnson v. Serenity Transportation, Inc.*, No. 15-cv-2004, 2018 WL 3646540, at *8 (N.D. Cal. Aug. 1, 2018) ("Plaintiffs satisfy the commonality requirement because whether Serenity misclassified its drivers as independent contractors rather than employees under California law is a common question underlying every cause of action that is capable of common resolution for the class"); *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 606 (N.D. Cal. Nov. 20, 2014) ("the question of whether Plaintiffs are independent contractors or employees of Exel is susceptible to classwide treatment because of Exel's uniform policies and practices as to its drivers"); *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 604 (S.D. Cal. 2010) (the question whether workers were misclassified as independent contractors or employees

12

was a common question that was capable of a common resolution for the class, thus sufficient to meet Rule 23(a)(2)'s commonality requirement). Factual variations among class members does not defeat the commonality analysis. *See Paxton*, 688 F.2d at 561 (factual variations among class members was insufficient to defeat class treatment for claims that share common questions); *Cortez*, 266 F.R.D. 289 ("[t]he rule does not require that every question of law or fact be common to every member of the class") (citation omitted).

       c.  *Rule 23(a)(3): Typicality is Satisfied Because the Class Members Share the Same Grievances.*

"Rule 23(a)(3) [simply] requires a named plaintiff to have claims or defenses which are typical of the claims or defenses of the class." *Lopez*, 06-cv-459, 2008 WL 3485289, at *16 (internal quotation marks and citation omitted). "The burden to establish typicality is 'fairly easily met, so long as other class members have claims similar to the named plaintiff.'" *Id.* at *17 (citing *DeBoer*, 64 F.3d at 1174). In assessing typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp. United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Further, the Eighth Circuit has held that typicality is satisfied as long as "there are other members of the class who have the same or similar grievances as the plaintiff." *Cortez*, 266 F.R.D. at 290. "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Lopez*, 06-cv-459, 2008 WL 3485289, at *16 (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3rd Cir. 2006)). Additionally, "differences in the claimed damages or the availability of certain defenses do not defeat typicality, as long as the class claims are generally based on the same legal or remedial theory." *Lopez*, 06-cv-459, 2008 WL 3485289, at *17 (citation omitted).

Here, Plaintiff's claims are typical of the class in that the proposed class members, were classified as independent contractors, like Plaintiff, and were subject to the same unlawful wage practices as Plaintiff. Moreover, Plaintiff, as class representative, is not subject to any unique defenses that could destroy typicality. The proposed class members have grievances similar to those of Plaintiff, and their claims are based on the same legal theories as Plaintiff's claims in this case. Thus, Plaintiff's claims are indistinguishable from those of the proposed Rule 23 Class members, and typicality is satisfied. *See Johnson*, No. 15-cv-2004, 2018 WL 3646540, at *7 (in misclassification case brought by truck drivers, "Plaintiff's claims are typical of the class because they arise out of Serenity's policy of uniformly treating the class members as independent contractors and having them sign nearly identical independent contractor agreements"); *Cortez*, 266 F.R.D. at 291 (finding typicality satisfied where plaintiffs relied on non-unique general allegations that plaintiffs performed work without compensation*)*; *Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-cv-2104, 2008 WL 4156364, at *7 (N.D. Cal. Sept. 5, 2008) (typicality was satisfied where plaintiffs "presented evidence that Cardinal had a corporate practice of classifying delivery drivers as independent contractors and that this practice was common to the overwhelming majority of Cardinal delivery drivers").

> d. *Rule 23(a)(4): Adequacy Is Satisfied Because the Class Representative Has Common Interests with the Class, and Class Counsel Will Protect the Interests of the Class.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Lopez*, No. 06-cv-459, 2008 WL 3485289, at *18 (quoting *Paxton*, 688 F.2d at 562).

This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625 (citation omitted).

Here, Plaintiff is an adequate representative of the class because he has no interests that are antagonistic to, or conflicting with, the interests of the proposed Class members. Moreover, he has agreed to make decisions about the case that are in the best interests of the Class.

Plaintiff also retained qualified attorneys who are experienced in class action and wage and hour litigation such as this. Plaintiff's Counsel have prosecuted numerous wage and hour and class action lawsuits on behalf of thousands of individuals. (Ex. I, Dirks Decl., at ¶ 3; Ex. L, McInnes Decl., ¶¶ 2, 6.) Moreover, Plaintiff and his Counsel have demonstrated their service and dedication to the class over the past year and a half of prosecuting the interests of the class and not their own interests. Thus, Plaintiff and Plaintiff's Counsel satisfy the requirements of Rule 23(a)(4). *See Cortez*, 266 F.R.D. at 291 (finding adequacy requirement satisfied where "the named plaintiffs have interests identical to the interest of the class" and "[t]he plaintiffs' counsel also appears qualified"); *Lopez*, 06-cv-459, 2008 WL 3485289, at *18 (same).

      e. *The Requirements of Rule 23(b)(3) Are Also Satisfied.*

In addition to the Rule 23(a) requirements, a plaintiff must also show the action may be maintained under Rule 23(b)(1), (2), or (3) prior to certification. *Amchem*, 521 U.S. at 614. Here, Plaintiff brings this action pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Rule 23 Class satisfies both the "predominance" and "superiority" requirements of Rule 23(b)(3).

        i. Rule 23(b)(3)(a): Predominance is Satisfied Because Common Questions of Law and Fact Predominate Over Questions Affecting Only Individual Class Members.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. It does not require that each element of Plaintiff's claims be susceptible to class-wide proof. *Amgen*, 568 U.S. at 469. It also does not require that the common questions will be answered, "on the merits," in favor of the class. *Id.* at 459-60. Rather, when determining whether common questions predominate, the Court asks if the Plaintiff's general allegations are true, would common evidence could suffice to make out a prima facie case for the class. *See Amchem Products, Inc.*, 568 U.S. at 469. And, importantly, when there are issues common to the class that predominate, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Day v. Celadon Trucking Servs., Inc.*, 827 F. 3d 817, 833 (8th Cir. 2016) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

In evaluating predominance, courts are mindful that "[p]redominance is a qualitative rather than a quantitative concept. It is not determined simply by counting: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (internal citation omitted). In fact, a single common question of law or fact may satisfy Rule 23's predominance requirement. *See Tyson Foods, Inc.*, 136 S. Ct. at 1045 ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately."). *See also Petrone v. Werner Enterprises, Inc.*, No. 12-cv-307, 2013 WL 3479280, at *6 (D. Neb. July 10, 2013)

16

(finding that liability exists under the Nebraska Wage Payment and Collection Act depends on whether Nebraska law provides compensation under the facts, and although the exact amount owed may differ, that common issue was sufficient to satisfy predominance).

For this reason, courts routinely find predominance in wage and hour misclassification cases such as this. *See Abarca v. Werner Enterprises, Inc.*, No. 14-cv-319, 2018 WL 1136061, at *13 (D. Neb. Feb. 28, 2018) (predominance was satisfied for a class of Werner's truck drivers alleging wage violations where common questions predominated individualized questions); *Villalpando*, 303 F.R.D. at 608 (predominance was satisfied where "the elements of the specific wage and hour claims asserted by Plaintiffs lend themselves to class treatment because of the common policies and practices that apply to all [truck] drivers"); *Bowerman, et al. v. Field Asset Services*, No. 13-cv-00057, 2015 WL 1321883, at *12 (N.D. Cal. Mar. 24, 2015) (predominance was satisfied in wage and hour case where plaintiffs alleged they were misclassified as independent contractors); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, (S.D.N.Y. Apr. 29, 2013) (predominance was satisfied where, "Plaintiffs' common factual allegations and a common legal theory – that Defendant violated federal and state wage and hour laws by misclassifying Plaintiffs as exempt administrative employees and failing to pay them for premium overtime hours – predominate over any factual or legal variations among class members"); *Nerland v. Caribou Coffee Co. Inc.*, 564 F. Supp. 2d 1010, 1035 (D. Minn. May 17, 2007) (predominance was satisfied where "generalized evidence of the propriety of defendant's uniform classification of its store managers as exempt from overtime compensation is generously present in this case").

Here, common questions predominate in establishing Werner's liability under Plaintiff's NWPCA and unjust enrichment claims, like in the cases cited above. Werner's decision to classify

Owner Operators as independent contractors was a single decision, and Werner applied it to all Owner Operators without considering individual circumstances.

Not only did Werner classify all Owner Operators as independent contractors, it treated them all the same as well because:

- All Owner Operators are required to comply with Werner's Handbook, including its numerous policies, rules and regulations (Ex. A, Maus Depo., at 31:7-19; 32:7-23; Ex. D, Werner Handbook, Bates 00002371);

- All Owner Operators are required to comply with Werner's Operating Agreement, including its numerous policies, rules and regulations (Ex. A, Maus Depo., at 31:7-19; 32:7-23; Ex. D, Werner Handbook, Bates 00002371);

- All Owner Operators are paid in the same manner (Ex. B, Tisinger Depo., at 37:11-19; Ex. F, Christopher Midgett Application for Employment, Bates 00000444); and

- All Owner Operators must drive exclusively for Werner (Ex. B, Tisinger Depo., at 81:16-24.)

Here, the common question of whether Werner's policy of classifying Owner Operators as independent contractors is lawful is more than sufficient to establish the predominance requirement of Rule 23(b)(3). The uniform policies, procedures, and agreements outweigh any minor variances among class members because they address the material ins-and-outs of Owner Operators' duties and Werner's ability to exercise control over them. *See Vallalpando*, 303 F.R.D. at 608-09 (predominance was satisfied in wage and hour misclassification case where truck drivers were all required to sign the same contracts, were all assigned assignments and delivery routes from company, and were all required to comply with the company's handbook and directives). The common questions to determine whether this single policy is lawful predominate over all other individual questions.

Even if the Court were to find that individual questions may exist, certification is still proper because any remaining individual questions would be significantly outweighed by these

common questions. *See Johnson*, No. 15-cv-2004, 2018 WL 3646540, at *8 ("whether certain drivers incurred more expenses than others does not make whether Serenity properly classified them as independent contractors an individual question"); *Tyson Foods, Inc.*, 136 S. Ct. at 1045 (2016) ("the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members"); *Villalpando*, 303 F.R.D. at 608 (predominance was satisfied despite individual issues related to how many hours were worked below the wage rate and individual issues related to reimbursement claims because "the presence of individualized damages cannot, by itself, defeat certification under Rule 23(b)(3)") (quoting *Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)); *Lopez*, 06-cv-459, 2008 WL 3485289, at *19 (this court held, "[e]ach case for each class member is about the defendant's common pay system for activities by production employees . . . [so] [b]ecause this same issue is common to all class members, regardless of the differences in individual experiences, the predominance element is satisfied").

> ii. Rule 23(b)(3)(b): Superiority is Satisfied Because a Class-wide Proceeding Would Be More Efficient than Proceeding on an Individual Basis.

Here, class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This analysis "requires the Court to determine whether the class action is manageable, taking into consideration choice of law determinations, notice to class members, etc." *Cope v. Let's Eat Out, Inc.*, 319 F.R.D. 544, 557 (W.D. Mo. May 10, 2017). "[D]ismissal for management reasons is never favored . . . [and] lack of manageability justifies denial of certification only where the attention and resources which would have to be devoted strictly to administrative matters will overwhelm any relief ultimately accruing to the plaintiff class." *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-cv-4321, 2013 WL

3872181, at \*15 (W.D. Mo. July 25, 2013) (internal quotation marks and citations omitted). *See also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015) (noting the "well-settled presumption" that "courts should not refuse to certify a class merely on the basis of manageability concerns").

Consolidating all Owner Operators' claims into a single lawsuit is in the best interest of the proposed Class members and the court system. There is no alternative forum that is superior to a class action under the facts of this case. Indeed, Werner's choice of law clause requires all cases be governed by Nebraska law. Prosecuting the exact same claims across multiple jurisdictions runs the risk of creating inconsistent rulings on identical claims. It is, therefore, desirable to consolidate these claims. Plaintiff's Counsel will be able to present this case on a class-wide basis as efficiently as on an individual basis and in less time and less money than prosecuting multiple claims. Because all proposed Class members are subject to Werner's policy of misclassifying employees as independent contractors, and as result were incorrectly paid, the class is cohesive and should be certified going forward.

## B. THE COURT SHOULD ALSO CONDITIONALLY CERTIFY THE FLSA COLLECTIVE ACTION.

Plaintiff brings Count I of the Second Amended Complaint as an "opt in" collective action on behalf of all similarly situated Owner Operators pursuant to 29 U.S.C. § 216(b). Plaintiff seeks to conditionally certify this FLSA collective action. In Plaintiff's Second Amended Complaint, Plaintiff defines the FLSA class as follows:

> All current and former drivers classified as independent contractors who transported Defendant's truckload shipments using trucks they owned or leased[6] within three (3) years of the commencement of this action.[7]

---

[6] The lessee class may be treated as a subclass.

[7] Specifically excluded from the class are independent contractors who own more than one truck or who employ or employed one or more drivers to drive their trucks.

(Second Amended Complaint ¶ 38, ECF No. 60).

This motion also seeks permission to send notice pursuant to 29 U.S.C. § 216(b) to current and former truck drivers informing them of their right to join the suit as soon as practicable. Without the requested Court-ordered notice, many Owner Operators' viable claims will be precluded under the FLSA's statute of limitations.

### 1. Overview and Purpose of FLSA Collective Actions.

Under the FLSA, an action for unpaid minimum wages may be maintained "by any one or more employees" individually, and on behalf of any other employees who are "similarly situated." 29 U.S.C. § 216(b). The opt-in collective action mechanism serves the dual purpose of lowering litigation costs for individual plaintiffs and decreasing the burden on the courts, through "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). In determining the meaning of "similarly situated" in defining a collective class, federal courts in the Eighth Circuit typically use a two-stage certification process: (1) the notice or conditional certification stage, applicable here, and (2) the opt-in or merits stage. *Lopez*, No. 06-cv-459, 2008 WL 3485289, at *7-8.

At stage one, courts typically certify the class on a minimal showing, approve issuance of notice to potential class members, and then prospective plaintiffs can opt in to the action. *Id.* at 8. At this stage, the Court does not determine whether Plaintiff and the Class were misclassified as independent contractors; "rather, the only issue presently before the Court is whether Plaintiffs are similarly situated." *See, e.g., Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1150 (D. Minn. Dec. 12, 2005). *See also Morales v. Greater Omaha Packing Co.*, No. 08-cv-0088, 2009 WL 1650016, at *4 (D. Neb. June 9, 2009) (plaintiff only has to show evidence establishing "a

colorable basis that the putative class members are the victims of a single decision, policy, or plan"). While "[a] colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim, *id*., "[t]his initial step creates a lenient standard which typically results in conditional certification of a representative class." *Chankin v. Tihen Commc'ns. Inc.*, No. 08-cv-196, 2009 WL 775588, at *1 (E.D. Mo. Mar. 20, 2009) (citation omitted). "To impose a strict standard of proof [at the certification stage] would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the . . . FLSA." *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. Oct. 30, 1991) (citing *Hoffmann*, 493 U.S. at 173).

In the second step of the FLSA collective action certification process, Werner may move to decertify the class. *Lopez*, 06-cv-459, 2008 WL 3485289, at *8. This step is generally done at the close of discovery or where discovery is largely complete. *Id.*

Unlike a traditional Rule 23 class, "a potential plaintiff's claim will be included in a collective action *only* if he expressly opts *in* to the action." *Lopez*, 06-cv-459, 2008 WL 3485289, at * 7 (emphasis in original) (citation omitted). Again, the distinct opt-in structure of § 216(b) heightens the need for putative class members to receive notice concerning the collective action quickly. *Id*. As a result of this distinction, certification and expedited notice to potential opt-in plaintiffs is essential to ensure timely assertion of putative class members' rights.

## 2. Plaintiff Has Satisfied the Lenient First Stage Standard, and Conditional Certification Is Appropriate.

Plaintiff has easily made the requisite modest factual showing and provided this Court a reasonable basis that a class of similarly situated persons exists. Plaintiff's position is supported by Werner's own statements and documents that show it classified all Owner Operators as independent contractors. The proposed class is similarly situated because all Owner Operators

performed the same job duties; were subject to, and required to comply with, the same policies and procedures; were paid in the same manner; and were denied statutory wages.

It is well settled that improper classification itself is a common policy or plan sufficient to satisfy FLSA conditional certification. *See Fontenot v. McNeil Industrial, Inc.*, No. 17-cv-3113, 2018 WL 5724863, at *3 (D. Neb. Sept. 19, 2018) (this court held that, in a case where plaintiff alleged a group of workers were improperly classified as independent contractors rather than employees, allegations that workers performed the same job duties, worked similar hours, were subjected to the same or similar policies and procedures, and were denied overtime was sufficient to meet the lenient standard for conditional certification). *See also Albelo v. Epic Landscape Productions, L.C.*, 2018 WL 3215738, at *3 (W.D. Mo. May 23, 2018) (finding defendant's assertion that all landscape laborers were exempt from overtime was a single policy that applied to all class members, making certification proper); *Baouch v. Werner Enterprises, Inc.*, No. 12-cv-408, 2014 WL 1884000, at * 1 (D. Neb. May 12, 2014) (this court found "[t]he plaintiffs have provided evidence of Werner's *per diem* pay program and that this program provided less than the minimum hourly wage . . . [t]his evidence illustrates that the putative class members were victims of a single decision, policy, or plan"); *Kennedy v. Boulevard Bank*, No. 12-cv-040, 2012 WL 3637766, at *2 (E.D. Mo. Aug. 22, 2012) ("an allegation that an employer improperly classified certain employees as exempt does not require further proof of a company policy: the classification scheme itself is the policy"); *Morales*, No. 08-cv-0088, 2009 WL 1650016, at *6 (this court granted conditional certification to an FLSA class reasoning that the defendant's policy or practice of failing to properly pay employees was the predominant activity, and the defendant's claim of differences between class members did not diminish the predominant similarity).

Finally, even if this Court is not yet convinced that Werner improperly classified its Owner Operators as independent contractors, this question goes to the merits of the case and should not be evaluated at this first stage of conditional certification. *See Fontenot*, No. 17-cv-3113, 2018 WL 5724863, at *3 ("Numerous courts have concluded that the question of whether a worker was improperly classified as an independent contractor goes to the merits of a case and should not be evaluated at the notice stage of conditional certification"). *See also Gonzalez v. Tier One Sec., Inc.*, No. 12-cv-806, 2013 WL 1455587, at *2 (W.D. Tex. Apr. 8, 2013) ("Defendants' argument that their classification of the security guards as independent contractors (and not employees) wholly dictates that conditional certification is inappropriate is without merit"); *Edwards v. Multiband Corp.*, No. 12-cv-2826, 2011 WL 117232, at *4 (D. Minn. Jan. 13, 2011) (finding it improper to address arguments concerning the merits of the plaintiff's claims at the notice stage of certification).

### 3. Plaintiff's Proposed Notice Informs Class Members About Their Rights and Should Be Approved.

A collective action depends on "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170. Notice prevents unauthorized and misleading communications. *Id.* at 171-72. Here, Plaintiff's proposed notice will provide accurate and timely notice to affected Owner Operators. (*See* Ex. G, Plaintiff's Proposed Notice of Class Action and Consent to Join.)

   a.   *Plaintiff's Proposed Notice Follows the FJC Model and This Court's Approved Notice in Abarca.*[8]

Plaintiff's proposed notice is based on examples provided on the Federal Judiciary Center's ("FJC") website, fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction, and this Court's prior authorized notice in the *Abarca* case.[9] The FJC is the education and research agency for the federal courts and was tasked to develop illustrative notices of proposed class action certifications and settlements by the Subcommittee on Class Actions of the U.S. Judicial Branch's Advisory Committee on the Federal Rules.[10] The FJC posts, and re-posts, its illustrative notices for use by courts and attorneys. As a result of this comprehensive research and analysis, the FJC's illustrative notices are recognized as the leading models for notice in class actions. *See, e.g., Pierce v. Novastar Mortgage, Inc.*, No. C-05-5835, 2007 WL 505670, at *3 (W.D. Wash. Feb. 12, 2007); *Varacallo v. Mass Mut. Life Ins. Co.*, 226 F.R.D. 207, 224 (D. N.J. Feb. 15, 2005).

   b.   *Plaintiff's Dissemination Plan Will Best Inform Class Members of Their Rights.*

Plaintiff requests that the Court approve Plaintiff's notice dissemination plan, which seeks to send notice by mail, email, and text message to all individuals who are current or former Werner drivers that were classified as independent contractors during the eligible class period, and requests that notice and consent forms be posted in conspicuous locations in Werner facilities.

Providing for multiple methods and attempts to notify putative class members is a reasonable and important means of ensuring that all potential plaintiffs have an adequate opportunity to join the litigation and is regularly approved. *See Rhodes v. Truman Med. Ctr., Inc.*,

---

[8] *Abarca et al. v. Werner Enterprises, Inc.*, No. 8:14-cv-00319 (D. Neb. Filed Oct. 10, 2014).

[9] *Id.*

[10] Federal Judicial Center, *Illustrative Forms of Class Action Notices: Overview*, https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction (last visited February 28, 2020).

No. 4:13-CV-00990-NKL, 2014 WL 4722285, at *4-5 (W.D. Mo. Sept. 23, 2014) (granting mail, email, posting, and reminder notice to putative plaintiffs); *Woods v. CVS*, No. 4:14-cv-583-SRB, ECF Doc. 43 (granting mail, email, posting, and reminder notice to putative plaintiffs);  *Emily v. Raineri Constr., LLC*, No. 4:15-cv-282, 2015 WL 7429993, at *5 (E.D. Mo. Nov. 20, 2015) (granting mail, email, and posting notice); *Alexander v. CYDCOR, Inc.*, No. 1:11-CV-01578-SCJ, 2012 WL 1142449, at *9 (N.D. Ga. Apr. 6, 2012) (granting mail and email notices); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492 (E.D. Cal.  Apr. 19, 2006) (granting mail and posting notice as approved methods).

Notice sent via text message and email is practical and cost efficient – especially as email and text messaging has become more prevalent and technology has made it efficient and inexpensive. Here, text message and email notice are especially important because class members are truck drivers, so the nature of their profession may inhibit timely receipt of residential mail. *See Landry v. Swire Oilfield Services, LLC*, 252 F. Supp. 3d 1079, 1129 (D.N.M. May 2, 2017) (finding notice by text message, email, and mail to oil workers was appropriate because that would "increase the chance of the class members receiving and reading the notice, especially because class members likely are dispersed to various wellsites around the country and may be away from their homes and addresses of record for weeks or months at a time"). *See also Harris v. Medical Transportation Management*, 317 F. Supp. 3d 421, 424 (D.C. July 17, 2018) (approving text message notice against transportation services broker for putative class of truck drivers); *In re Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (the court found that given the high turnover rate of the restaurant industry, notice via text message was a viable and efficient means of communicating with prospective class members); *Penthouse Exec. Club Compensation Litigation*, No. 10-cv-1145, 2014 WL 185628, at *7

(S.D.N.Y. Jan. 14, 2014) (the court authorized and approved the sending of two text messages to notify class members); *In re AT&T Mobility Wireless Data Service Sales Tax Litigation*, 789 F. Supp. 2d 935, 941 (N.D. Ill. June 2, 2011) (the district court approved a notice plan allowing notice by text message and email); *Nobles v. State Farm Mutual Automobile Insurance Co*., No. 2:10-CV-04175, 2011 WL 5563444, *2 (W.D. Mo. Nov. 15, 2011) (utilizing email notice "simply as a supplement to notice by first-class mail); *Phelps v. MC Commc'ns, Inc.*, 2:11-CV-00423-PMP, 2011 WL 3298414 (D. Nev. Aug. 1, 2011) (permitting email notice because "[e]mail is an efficient, reasonable, and low-cost supplemental form of notice" and rejecting the defendant's argument that emails could be altered or abused).

### c. *Reminder Notices Are Appropriate.*

Plaintiff also requests that the Court authorize Plaintiff to send a reminder email and postcard notice to putative class members 30 days before the 90-day deadline for opting-in expires. These serve to remind those persons who wish to join to do so within the notice period and ensures that those whose notices were misplaced, not received, or unopened still have a fair opportunity to join. Reminders have been regularly approved by courts. *See, e.g., Landry*, 252 F. Supp.3d at 1130 (authorizing a reminder notice thirty days into the opt in period); *Alexander v. Cydcor, Inc.*, No. 11-cv-1578, 2012 WL 1142449, at *9 (N.D. Ga. Apr. 6, 2012) (authorizing two subsequent additional mailings after the initial notice mailing); *Boyd v. Bank of Am. Corp.*, No. 13-cv-2403, 2013 WL 6536751, *4 (C.D. Cal. Dec. 11, 2013) (approving a reminder notice); *Chhab v. Darden Restaurants, Inc.*, 11-cv-8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (approving reminder notice over the defendant's objections); *Ramirez v. Ghilotti Bros, Inc.*, 941 F. Supp. 2d 1197, 1121 (N.D. Cal. Apr. 25, 2013) (authorizing a second notice, substantially the same as the first, as a reminder 45 days after the first notice); *Sanchez v. Sephora USA, Inc*., No. 11-cv-3396,

2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012) (finding a second notice or a reminder appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in); *Helton v. Factor 5, Inc.*, No. 10-cv-4927, 2012 WL 2428219, at *7 (N.D. Cal. June 26, 2012) (ordering a reminder postcard be sent to potential plaintiffs 30 days before deadline for opting in); *Gee v. Suntrust Mortgage, In.,* No. 10-cv-1509, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) (permitting a reminder notice 45 days after issuance of the first notice).

> d. *Werner Should Be Ordered to Provide a Detailed List of Putative Class Members and Their Contact Information to Assist with Notice.*

To facilitate notice, Plaintiff requests that the Court order Werner to provide the names, telephone numbers, last known addresses, Werner ID number, and email addresses of the potential opt-ins to facilitate notice. *See Oliphant v. Sprint Corp.*, No. 18-cv-0353, 2019 WL 2088052, at *4 (D. Neb. Apr. 26, 2019) ("To ensure that potential plaintiffs receive "accurate and timely" notice, courts frequently order the defendant-employer to disclose the names and addresses of potential plaintiffs to plaintiffs' attorneys). *See also Taylor v. Bear Comm'ns, LLC*, No. 12-cv-01261, 2013 WL 3270971, at *4 (W.D. Mo. June 27, 2013) (ordering production of class member addresses to assist with distribution of notice); *Uwaeke v. Swope Cmty. Enters., Inc.*, No. 12-cv-1415, 2013 WL 3467062, at *4 (W.D. Mo. July 10, 2013) (addresses, telephone numbers, and emails); *Harris v. Pathways Cmty. Behavioral Healthcare, Inc.*, No. 10-cv-0789, 2012 WL 1906444, at *6 (W.D. Mo. May 25, 2012) (addresses, telephone numbers, and emails); *Greenwald v. Phillips Home Furnishings, Inc.,* No. 08-cv-1128, 2009 WL 259744 at *7 (E.D. Mo. Feb. 3, 2009) (names, addresses and telephone numbers); *Rivera v. Brickman*, No. 05-1518-LP, 2006 WL 680926, at *1 (E.D. Pa. March 10, 2006) (phone numbers).

*e. Submission of Consent to Join Forms and Letters of Exclusion.*

Since this case involves Rule 23 class action claims and an FLSA collective action claim, class members can opt in or exclude themselves from this lawsuit. To opt in to the FLSA claim, they must either mail the completed consent to join form included with the notice or submit their consent electronically. To opt out of the Rule 23 claims, they may mail a letter to the notice administrator or submit their exclusion request electronically. Online submission: (1) is cheaper than mailing business reply envelopes; (2) is easier for technically-minded class members; (3) provides less room for human error and postage problems; and (4) is secure. Given that Plaintiff will be paying for an administrator to send notice to the class, using the administrator's online submission technology should be readily authorized. Further, courts routinely authorize the online submission of consent and claim forms. *See Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517–18 (W.D. Tex. Aug. 27, 2015) (allowing potential plaintiffs to execute their forms online via electronic signature service); *Woods v. Vector Mktg. Corp.*, No. C-14-0264, 2015 WL 1198593, at *6 (N.D. Cal. Mar. 16, 2015) (same); *Harris v. Chipotle Mexican Grill, Inc.*, No. 13-cv-1719, 2014 WL 4449670, at *19 (D. Minn. Apr. 10, 2014) (same); *Deatrick v. Securitas Sec. Servs. USA, Inc.*, No. 13-cv-05016, 2014 WL 5358723, at *6 (N.D. Cal. Oct. 20, 2014) (same); *Jones v. JGC Dallas LLC*, No. 3:11-cv-2743, 2012 WL 6928101, at *8 (N.D. Tex. Nov. 29, 2012) (same); *Kelly v. Bank of Am.*, N.A., No. 10-C-5332, 2011 WL 7718421, at *2 (N.D. Ill. Sept. 23, 2011) (authorizing class members to submit a consent to join form by electronically providing name, date of birth, and last four digits of social security number via notice administration website).

*f.    Time for Class Members to Opt-In to the Litigation.*

Finally, Plaintiff requests the Court allow ninety (90) days after the mailing of the court-authorized notice for those persons receiving notice to opt-in to the case.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court grant this motion and issue an Order:

1.    Certifying a Rule 23 Class of all current and former drivers classified as independent contractors who transported Defendant's truckload shipments using trucks they owned or leased within four (4) years of the commencement of this action;

2.    Conditionally certifying an FLSA Class of all current and former drivers classified as independent contractors who transported Defendant's truckload shipments using trucks they owned or leased within three (3) years of the commencement of this action;

3.    Designating Plaintiff Christopher Midgett as class representative for the Rule 23 and FLSA Classes;

4.    Approving Williams Dirks Dameron LLC and McInnes Law LLC to act as class counsel in this matter; and

5.    Requiring the issuance of the notice form as set forth in Exhibit G to class members, and setting a deadline of 90 days after the date of the Court's Order granting certification, for which putative class members can join this matter;

6.    Requiring Werner to provide to Plaintiff's counsel a class list of all individuals who meet the above class description, including their current or last known address, phone number, dates of employment in a covered position, email address, and Werner ID number within fourteen (14) days of the issuance of the order;

7.     Authorizing Plaintiff to send notice to class members through first-class mail, email, and text messaging as well as a reminder postcard and email; and

8.   Granting such other relief as this Court deems just and proper.

Dated: March 10, 2020                    Respectfully submitted,


WILLIAMS DIRKS DAMERON LLC

/s/ Eric L. Dirks
Eric L. Dirks *(admitted pro hac vice)*
Courtney Stout (*admitted pro hac vice*)
1100 Main Street, Suite 2600
Kansas City, MO  64105
Phone: (816) 945-7110
Fax: (816) 945-7118
dirks@williamsdirks.com
cstout@williamsdirks.com

Jack D. McInnes (admitted *pro hac vice*)
**MCINNES LAW LLC**
1900 W. 75th Street, Suite 120
Prairie Village, KS 66208
Phone: (913) 220-2488
Fax: (913) 273-1671
jack@mcinnes-law.com

Steven H. Howard, #18582
**DOWD HOWARD & CORRIGAN, LLC**
1411 Harney Street, Suite 100
Omaha, NE 68102
steve@dowd-law.com

***Counsel for Plaintiff and the Putative Class***

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2020, that a true and correct copy of the foregoing was electronically filed with the Clerk for the United States District Court of the District of Nebraska using the CM/ECF system, which sent notification of such filing to counsel.

/s/ Eric L. Dirks
Eric L. Dirks

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(d)(3)</u>

I hereby certify this Memorandum in Support of Plaintiff's Motion for Class Certification complies with District of Nebraska Local Rule 7.1(d)(3). All text – including the caption, headings, footnotes, and quotations – are counted in the word limits. As determined by word processing software, this memorandum in support has 11,464 words and is in compliance with Local Rule 7.1(d)(1)(A) 13,000-word limit.

/s/ Eric L. Dirks
Eric L. Dirks