IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHRISTOPHER MIDGETT, individually and on behalf of similarly-situated persons,<br><br>           Plaintiffs,<br><br>v.<br><br>WERNER ENTERPRISES, INC.,<br><br>           Defendant. | CASE NO.: 8:18-CV-00238<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF OBJECTIONS TO MAGISTRATE'S ORDER AND FINDINGS AND RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT AND FOR CLASS CERTIFICATION** |

**I.  INTRODUCTION**

The Magistrate committed reversible error by failing to properly apply the good cause standard in Fed. R. Civ. P. 16(b) and by granting Plaintiff leave to file a Third Amended Complaint over one year after the deadline to amend pleadings and without good cause. In June, 2020, Plaintiff moved to amend his Complaint to add a new claim under the Nebraska Wage and Hour Act and to eliminate his claim under the Nebraska Wage Payment and Collection Act. The only reason Plaintiff gave for his belated amendment was a July, 2018 decision from the Nebraska Supreme Court. However, the deadline to amend pleadings passed *in June, 2019*. Accordingly, Plaintiff had over eleven months after that decision was handed down to amend his Complaint if he saw fit to do so. The Eighth Circuit has made clear that case law issued before a deadline to amend pleadings passes cannot provide good cause for extending the deadline. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 713-18 (8th Cir. 2008).

The Magistrate also erred in granting Plaintiff's Motion for Conditional Certification. Although the Magistrate acknowledged that Plaintiff's claim that he was misclassified as an independent contractor turns on individualized evidence, the Magistrate's Order incorrectly states that the individualized nature of Plaintiff's claims "goes to the merits." The Order also recites an incorrect standard in stating that Plaintiff demonstrated there "may be" other drivers who share his grievance and wish to join this

1

lawsuit, because Plaintiff bears the burden to offer evidence that other similarly situated drivers *do* exist and *do* wish to join this lawsuit.

## II. ARGUMENT

### A. It was error to grant Plaintiff leave to file a Third Amended Complaint over one year after the deadline to amend.

Once a district court has issued a progression order with case deadlines, as in this case, those deadlines "may be modified *only for good cause* and with the judge's consent." Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715-16 (8th Cir. 2008); see also e.g., Fed. R. Civ. P. 16(b). Here, Plaintiff bases his proposed amendment on a July, 2018 decision by the Nebraska Supreme Court. May v. Midnight Dreams, Inc., 300 Neb. 485, 915 N.W.2d 71 (2018). However, **a party cannot rely on new case law to establish good cause for extending the deadline to amend pleadings unless that case law was issued *after* the original deadline**. Sherman, 532 F.3d at 715-16. The Mays case was issued eleven months *before* the June, 2019 deadline to amend pleadings. (Filing 39, Final Progression Order, ¶2). Accordingly, even if the Mays case did change or clarify Nebraska law (which Werner disputes), Plaintiff had ample time to discover that case law and amend his Complaint before the June, 2019 deadline passed. Plaintiff's failure to investigate the applicable law before the deadline does not establish good cause, as required by Fed. R. Civ. P. 16(b), for extending that deadline.

The Eighth Circuit has held that **"where there has been "no change in the law, no newly discovered facts, or any other changed circumstance ... *after* the scheduling deadline for amending pleadings," the Court "may conclude that the moving party has failed to show good cause" to extend the deadline to amend.** Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 947-48 (8th Cir. 2012); see also, e.g., Sherman, 532 F.3d at 713-18 (same). In Sherman, for example, the defendant moved to amend its answer to assert an affirmative defense seventeen months after the deadline to amend. Id. at 713. The defendant argued good cause existed to extend that deadline because counsel belatedly determined, based on research conducted in connection with a summary judgment motion, that preemption was a viable affirmative defense. Id. at 718. That is exactly what happened here. Plaintiff realized the need for an amendment after reviewing Defendant's Brief in Opposition to Plaintiff's Motion to

2

Certify the Class. (Filing 76, Plaintiff's Motion for Leave to File Third Amended Complaint, pp. 1-2). As the Eighth Circuit concluded in Sherman, "[h]ad Winco been **diligent, it would have performed this research at the outset of the litigation, *and at least prior to the deadline*"** to amend pleadings. 532 F.3d at 718. The Eighth Circuit further noted there were no changes in the law, newly discovered facts, or other changed circumstances that occurred *after* the deadline to amend and made that defense more viable than it was when the case was filed. Id. As a result, the defendant failed to show good cause for extending the deadline to amend pleadings and the Eighth Circuit reversed the district court's order permitting the belated amendment. Id.

Failure to correctly apply the good cause standard when ruling on a motion to extend a scheduling order deadline is grounds for appellate reversal and may result in the appellate court vacating any judgment that is ultimately entered in the case. See e.g., Petrone v. Werner Enters. Inc., 940 F.3d 425 (8th Cir. 2019) (vacating a judgment entered for the class after trial of certified claims because the district court abused its discretion by extending the plaintiffs' expert deadline over the defendant's objection and without good cause); Sherman, 532 F.3d at 715-18 (remanding for a new trial because the district court abused its discretion by permitting the defendant to amend its answer to assert a new affirmative defense long after the deadline to amend passed and without good cause). The Magistrate's Order is contrary to Sherman. The Order states that Plaintiff showed good cause to amend over one year after the deadline because "[u]pon realizing he may have brought his action under the wrong statutory scheme based on case law decided after this case was filed, Plaintiff sought to remedy that issue by filing a motion to amend." (Filing 92, Order and Findings and Recommendation ("Order"), p. 4). However, although the Mays decision was published after this case was filed, Mays was issued eleven months *before* the June, 2019 deadline to amend pleadings. Under binding Eighth Circuit law, Plaintiff's failure to investigate and understand the applicable law before the deadline to amend passed is not good cause for extending that deadline. Sherman, 532 F.3d at 718. This Court should vacate the Magistrate's Order and deny Plaintiff's Motion for Leave to Amend.

3

> **B.  It was error to conclude the individualized nature of Plaintiff's FLSA claim goes to the merits and not to whether the case should be conditionally certified.**

The Magistrate recognized that "the determination of whether owner operators were misclassified would require individualized proof." (Filing 92, Order, p. 6). However, the Order incorrectly concludes the individualized nature of Plaintiff's claim "goes to the merits" and "should not be evaluated at the notice stage" of conditional certification. (Id.). Under Eighth Circuit law, one key inquiry in deciding whether a class should be certified is "whether the defendant's liability to all plaintiffs may be established with common evidence." Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1029 (8th Cir. 2010). In this District and others, that same standard applies in deciding whether conditional certification is appropriate. See, e.g., Martinez v. Cargill Meat Sols., 265 F.R.D. 490, 497 (D. Neb. 2009) ("If a trial would require individualized determinations to resolve the claims of each plaintiff, certification as a collective action may be inappropriate."); Purdham v. Fairfax Cty. Pub. Sch., 629 F. Supp. 2d 544, 549 (E.D. Va. 2009) (denying conditional certification because class members were paid different amounts and in different manners, so liability and damages would turn on an individualized analysis); West v. Border Foods, Inc., No. 05-2525, 2006 U.S. Dist. Lexis 96963, *25-29 (D. Minn. July 10, 2006) (quotation omitted) (noting claims that require "significant individual considerations are inappropriate for conditional certification" and denying conditional certification where the alleged violations occurred "on a manager-by-manager basis and associate-by-associate basis involving particular circumstances and anecdotal testimony"); Hinojos v. Home Depot, Inc., No. 2:06-CV-00108, 2006 U.S. Dist. LEXIS 95434, at *7 (D. Nev. Dec. 1, 2006) ("where FLSA claims require significant individual determinations and considerations, they are inappropriate for conditional certification under section 216(b)"); Diaz v. Elec. Boutique, No. 04-0840, 2005 WL 2654270, *5 (W.D.N.Y. Oct. 17, 2005) (noting employees are not similarly situated if each claim turns on evidence unique to that individual); Holt v. Rite Aid Corp., 333 F.Supp.2d 1265, 1271 (M.D. Ala. 2004) (denying conditional certification because the court would have to inquire into the daily tasks performed by each class member to rule on liability).

Contrary to the Order, the individualized nature of the evidence required to prove Plaintiff's claims does not go "to the merits" and must be considered by this Court at the conditional certification stage. Specifically, before conditionally certifying an FLSA collective action, the Court must make a determination that Plaintiff's claims and those of the putative collective action members "share common underlying facts and do not require substantial individualized determinations for each class member." Purdham, 629 F. Supp. 2d at 549. Because the Order incorrectly states that the individualized nature of Plaintiff's claims "goes to the merits," the Court should decline to adopt the Magistrate's recommendation regarding conditional certification. As recognized and acknowledged by the Magistrate, Plaintiff's claim that he was misclassified requires individualized proof that renders the claim unsuitable for collective action status.

### C.  It was error to certify a collective action without evidence that similarly situated drivers exist and wish to join this lawsuit.

The Order is also erroneous because Plaintiff did not offer evidence that other similarly situated owner operators exist and wish to join this lawsuit. A plaintiff seeking conditional certification under the FLSA must show that other similarly situated workers exist and desire to opt into the collective action. See, e.g., Martinez v. Cargill Meat Solutions, 265 F.R.D. 490, 496 (D. Neb. 2009); Parker v. Rowland Express Inc., 492 F. Supp. 2d 1159, 1164-65 (D. Minn. 2007); Knutson v. Blue Cross & Blue Shield of Minn., Civ. no. 08-584, 2008 WL 4371382, *3 (D. Minn. Sept. 23, 2008). Here, Plaintiff did not identify a single other driver who wishes to join this lawsuit. Plaintiff admitted he has not spoken with any driver about his claims since he filed his lawsuit and the only Werner owner operators with whom he has spoken told him they made more money as owner operators than as company drivers. (Filing 70-1, Page ID # 911 (Plf. Depo. 135:18-136:19)). Other owner operators identified by Werner confirmed they do not wish to join the lawsuit and do not want the relief Plaintiff seeks. (Filing 70-3, Page ID # 1005 (Brayman Dec. ¶23); Filing 70-4, Page ID # 1008 (Jackson Dec. ¶20), Filing 70-2, Page ID # 1002 (Tew Dec. ¶21)). Because Plaintiff did not offer evidence that other similarly situated drivers wish to join this lawsuit, the Magistrate erred in granting conditional certification.

Although Plaintiff failed to identify any drivers who wish to join this lawsuit, the Order states, in discussing that requirement, that "there *may be* other owner operator drivers who share the same grievance as Plaintiff … and who *may* want to opt in to this action." (Filing 92, Order p. 6). However, that is not the standard. Plaintiff bears the burden to show that there are other drivers who share his grievance *and* those individuals "desire to opt in to the litigation." Parker, 492 F. Supp. 2d at 1164-65 (emphasis added). Plaintiff cannot meet that burden simply by asserting there "may be" other similarly situated drivers who may join the suit at some later date, "because there is no guarantee that those persons will actually join the lawsuit." Id. (concluding plaintiffs could not satisfy their burden to show other similarly situated employees wished to join the lawsuit merely by offering evidence that other similarly situated employees existed, without evidence that any of those employees wanted to join the lawsuit, and denying motion for conditional certification because the plaintiffs did not identify any other employee who actually wanted to join the lawsuit).

This case is not like Fontenot v. McNeil Indus., Case No. 17-cv-3113, 2018 U.S. Dist. Lexis 188141, *3 (D. Neb. Sept. 19, 2018), cited in the Order. In that case, the plaintiff offered an affidavit in support of class certification, attesting to discussions with other similarly situated employees who wanted to join the lawsuit and the plaintiff submitted a consent form from another employee. Id. at *5-*6. By contrast, Plaintiff has not offered any consent forms from any other drivers. Moreover, Plaintiff admitted he has not talked to a single other owner operator since he filed this lawsuit and he testified "**it's not my job to go around and talk to other owner operators.**" (Filing 70-1, Page ID # 911-912 (Plf. Depo. 136:4-19; 138:9-18)) (emphasis added). On this record, Plaintiff has failed to meet his burden of showing that other similarly situated drivers share his grievance and wish to join this lawsuit. For the same reasons, Plaintiff is not an adequate class representative. See Parker, 492 F. Supp. 2d 1165-65 (D. Minn. 2007); see also e.g., Simmons v. T-Mobile USA, Inc., No. H-06-1820, 2007 U.S. Dist. LEXIS 5002, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) (noting "[o]thers' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants."); Lance v. The Scotts Co., No. 04-5270, 2005 U.S. Dist. LEXIS 14949, 2005 WL 1785315, at *9

6

(N.D. Ill. July 21, 2005) (denying conditional certification where plaintiff had "failed to come forward with evidence other than his own hearsay" that others desired to opt in); Cash v. Conn Appliances, Inc., 2 F. Supp. 2d 884, 897 (E.D. Tex. 1997) ("A showing that there are other employees of the . . . employer who desire to opt in also must be made before a case can proceed as a FLSA collective action.").

Plaintiff's failure to offer evidence of other similarly situated drivers who wish to join this lawsuit is particularly telling because Plaintiff started driving as a Werner owner operator in January, 2015, and continued in that role until June, 2019, **over one year *after* he filed this lawsuit**. (Filing 70-1, Page ID #885 (Plf. Depo. 31:19-32:9); Filing 70-5, Page ID #1011 (Tisinger Dec. ¶14)). "The length of [Plaintiff's] tenure with the company suggests that he likely knows the identity of several other [Werner owner operators]" and it should not have been "an insurmountable hurdle for him to contact those drivers about opting in to this litigation." Parker, 492 F. Supp. 2d at 1166-67 (denying conditional certification because the plaintiff did not offer evidence of any similarly situated drivers who wished to join the lawsuit, despite having worked at the company for over five years). Considering Plaintiff had ample opportunity before and after this lawsuit was filed to find other drivers who wished to join, his failure to offer evidence of any such drivers significantly calls into question the Magistrate's conclusion that such drivers "may" exist.

Not only does the Order recite the wrong standard but the conclusion that there "may be" other similarly situated drivers who wish to join this case is based on testimony taken out of context from the deposition of Steve Tisinger, Werner's Senior Director of Accounting Administration. (Filing 92, Order, p. 6) (citing Filing 66-2). Although Plaintiff claimed Mr. Tisinger admitted owner operators "regularly" make less than minimum wage, Mr. Tisinger did not say that. As Mr. Tisinger explained, certain owner operators, just like any other small business owner, may experience weeks where their deductions exceed the amount of their net pay. (Compare Filing 66-2, Page ID # 373-734 (Tisinger Depo. 68:12-16) with Filing 65, Page ID # 272 (Plaintiffs' Memorandum in Support of Class Certification, p. 4)). That is due to the amount and timing of certain expenses and deductions. (Filing 66-2, Page ID # 373-734 (Tisinger Depo. 68:12-16); see also id. at 69:1-11). Mr. Tisinger explained this varies by owner operator and some drivers ***never***

7

have negative revenue. (Filing 66-2, Page ID #373 (Tisinger Depo. 67:11-14); see also Filing 70-4, Page ID # 1007 (Jackson Dec. ¶10)). Mr. Tisinger's testimony does not support the conclusion stated in the Order that other similarly situated drivers "may" exist and "may" wish to join this lawsuit - far from it.

Requiring Plaintiff to demonstrate that other drivers share his grievance and wish to join this lawsuit is important because the record demonstrates Plaintiff brought this lawsuit due to his own personal dissatisfaction with being a small business owner. Although Plaintiff claims he was unable to make a profit in Werner's owner operator program, the only other owner operators with whom Plaintiff spoke told him they made more money as owner operators. (Filing 70-1, Page ID # 911 (Plf. Depo. 135:18-136:19)). Similarly, the owner operators identified by Werner confirmed they were very profitable. (Filing 70-3, Page ID # 1005 (Brayman Dec. ¶23); Filing 70-4, Page ID # 1008 (Jackson Dec. ¶20), Filing 70-2, Page ID # 1002 (Tew Dec. ¶21)). A review of the evidence submitted by the parties confirms Plaintiff's experience in the owner operator program is due to his own poor business decisions. For example, because Plaintiff refused to drive in certain areas of the country and refused to haul certain loads, he got fewer loads than owner operators who did not restrict the loads they were willing to accept. (Filing 66-3, Page ID # 427 (Dittberner Depo. 77:21-78:3)). Plaintiff also failed to perform preventative maintenance on his truck and had to borrow money from Werner on several occasions to pay for repairs, whereas other owner operators performed preventative maintenance and never borrowed money for repairs. (Filing 70-1, Page ID #952, 955 (Ex. 4 and 5 to Plf. Depo., WRN-Midgett 00000019-00000024); Filing 70-2, Page ID #999 (Tew Dec. ¶9); Filing 70-4, Page ID # 1007 (Jackson Dec. ¶7)). Plaintiff also did not do anything to manage his fuel costs when he first became an owner operator. (Filing 70-1, Page ID #888, 901 (Plf. Depo. 45:13-21, 94:2-9)). By contrast, other drivers managed their fuel expenses by carefully planning trips, driving out of route to find cheaper fuel, monitoring their speed, purchasing more aerodynamic trucks, and fueling in states with cheaper fuel. (Filing 70-2, Page ID # 998, 1000 (Tew Dec. ¶¶4, 14); Filing 70-4, Page ID #1006-07 (Jackson Dec. ¶¶4, 11)). The fact that Plaintiff is dissatisfied with his experience in the owner operator program does not establish that any other driver shares his grievance or wishes to join this lawsuit.

Because Plaintiff did not offer evidence that any other similarly situated drivers wish to join this lawsuit, and because the record conclusively demonstrates that other owner operators do not share Plaintiff's grievance and he is not an appropriate class representative, the Court should reject the Magistrate's recommendation regarding conditional certification

### D. The Order conflicts with rulings by other courts on motions to certify similar claims.

Contrary to the Order, "**[c]ourts typically *deny* … certification in [misclassification] cases, because the proof necessary to determine whether the putative plaintiffs are employees or independent contractors cannot generally be applied to the class as a whole.**" Blair v. Transam Trucking, Inc., 309 F. Supp. 3d 977, 1003 n. 182 (D. Kansas, 2018) (emphasis added) (citing Pena v. Handy Wash, Inc., 2015 U.S. Dist. LEXIS 180653 (S.D. Fla. 2015); Carrera v. UPS Supply Chain Solutions, Inc. 2012 U.S. Dist. LEXIS 192917 (S.D. Fla. 2012); Andel v. Patterson-UTI Drilling Co., 280 F.R.D. 287, 290 (S.D. Tex. 2012); Demauro v. The Limo, Inc., 2011 U.S. Dist. LEXIS 1229 (M.D. Fla., 2011)); see also e.g., Harris v. Express Courier, Int'l Inc., 2017 U.S. Dist. LEXIS, 192363, *20-21 (W.D. Ark. Nov. 21, 2017) (the degree of control and the opportunity for profit and loss cannot be decided on a class-wide basis); Casias v. Distrib. Mgmt. Corp., Case No. 11-00874, 2014 U.S. Dist. Corp., 197250, *51 (D. N.M. March 31, 2014) (individualized evidence of each potential class member's experience on the questions of control, supervision, wait time, and back-up drivers will predominate); Myers v. Hertz Corp., 624 F.3d 537 (2d Cir. 2010) (a blanket exemption policy is not, standing alone, determinative of classification issues, which require individual factual analysis to resolve); Washington v. Joe's Crab Shack, 271 F.R.D. 629 (N.D. Cal. 2010) (collecting cases) (rejecting a claim that wage-and-hour cases are routinely certified because "there is no rule that requires that wage-and-hour claims be certified for class treatment regardless of the evidence submitted in support of the motion for certification"). These cases were not addressed in the Order.

### E.  The parties agree the Magistrate's recommended definition of the FLSA class is overbroad and incorrect.

Werner also objects to the proposed definition of the FLSA class set forth in the Order. The Order recommends conditional certification of a class of "[a]ll current and former drivers classified as independent contractors who transported Defendant's truckload shipments using trucks they owned or leased within three (3) years of the commencement of this action." (Filing 92, p. 9, ¶2). However, the parties agree that class definition is overly broad and the class Plaintiff sought to certify was actually more limited in scope.

Plaintiff initially sought to represent a putative class of owner operators *who purchased a truck from Werner*. (Filing 1, Complaint, ¶38). On November 12, 2019, Plaintiff moved to amend his Complaint to expand the class definition to add: (a) drivers who *leased* a truck from Werner; and (b) drivers who *leased or purchased a truck from any person or entity other than Werner* (collectively, the "Expanded Class"). (See Filing 54). After Plaintiff moved to expand the class definition, the parties agreed the class period for the Expanded Class looks back from November 12, 2019, the date Plaintiff filed his Motion for Leave to Amend the Complaint. Plaintiff also acknowledged the class period for <u>all</u> class members should end on May 1, 2019, the date on which an exclusivity requirement contained in the former Contractor Operating Agreement ended. (Filing 77, Plaintiff's Reply Brief in Support of Motion for Class Certification, pp. 12-13).

The parties' counsel have conferred regarding the appropriate class definition. The parties agree the FLSA class definition should be corrected to include only:

 a. All current and former drivers classified as independent contractors who transported Werner's truckload shipments any time between May 30, 2015, and May 30, 2019, using trucks they purchased from Werner; and

 b. All current and former drivers classified as independent contractors who transported Werner's truckload shipments any time between November 12, 2016, through May 30, 2019, using trucks they leased from Werner or leased or purchased from a person or entity other than Werner.

Plaintiff's counsel have represented to Werner's counsel that they will be submitting a revised Notice to the Magistrate today, with this corrected class definition. Accordingly,

10

Werner submits that the proposed class definition set forth in the Order is overly broad and, to the extent any FLSA class is certified, the class definition should be corrected as set forth herein.

## III. CONCLUSION

For the foregoing reasons, Werner respectfully requests an Order from this Court as follows:

i) vacating the Magistrate's Order granting Plaintiff's Motion for Leave to File a Third Amended Complaint and denying Plaintiff's Motion for Leave to Amend; and

ii) declining to adopt the Magistrate's order conditionally certifying Plaintiff's FLSA claim and denying Plaintiff's Motion for Conditional Certification.

        WERNER ENTERPRISES INC.,
        Defendant.

By: */s/ Elizabeth A. Culhane*
    Joseph E. Jones, #15970
    Elizabeth A. Culhane, #23632
    Sally L. McGill, #24790
    FRASER STRYKER PC LLO
    500 Energy Plaza
    409 South 17th Street
    Omaha, NE 68102-2663
    Telephone: (402) 341-6000
    Facsimile: (402) 341-8290
    jjones@fraserstryker.com
    eculhane@fraserstryker.com
    smcgill@fraserstryker.com
    ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the word limit set forth in NECIVR 7.1(d)(1)(A) and contains 4,113 words and that the word-count function of Microsoft Word was applied to include all text, including the caption, headings, footnotes, and quotations.

*/s/ Elizabeth A. Culhane*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court for the United States District Court for the District Court of Nebraska using the CM/ECF system on this 27th day of October, 2020, which system sent notification of such filing to all parties' counsel of record.

*/s/ Elizabeth A. Culhane*

2443463v7